GARRISON, Judge.
This is an appeal from a judgment of the district court dated April 26, 1983, granting judgment in favor of Mrs. Florine Jackson and awarding her $5,000.00, with an 8% penalty from August 31, 1982 until paid, plus judicial interest and all costs. From that judgment which we affirm, defendant Western & Southern Life Insurance Company appeals.
On July 1, 1974, Mrs. Florine Jackson purchased a life insurance policy with a face amount of $2,000.00 issued by defendant, insuring her life and naming her children as beneficiaries. At that time she also purchased a life insurance policy insuring her minor children and naming herself as beneficiary, which policy was given the sales name “Family Children Security Protector” policy, (hereinafter FCSP policy).
The FCSP policy provided for several types of coverage (benefits):
1. Death
2. Loss of Sight or Limbs
3. Accidental Death
4. Death, Accidental Death or Loss of Sight/Limbs While a Fare-Paying Passenger on a Public Conveyance
The FCSP policy covered the child until his 25th birthday or the FCSP “Cease Date,” in this case 7/1/99. The FCSP policy also provided exclusions for suicide under the Accidental Death Benefits and under the Loss of Sight of Limbs Benefit, which ex- *1246 eluded “intentionally self-inflicted injury or self-inflicted injury while insane.” The trial judge apparently found that the FCSP policy did not provide a suicide exclusion under the Death Benefits provision. Lastly, the FCSP policy also provided an exchange clause:
“EXCHANGE While this agreement is in force an Insured Child may, upon written request and payment of the first premium within 31 days prior to the earlier of his 25th birthday and the Family Children Security Protector Cease Date, exchange the insurance on his life as of such date without evidence of insurability for any endowment or level premium limited payment life plan then issued by Western and Southern. The amount shall not be less than $1,000 nor more than five times the Life Insurance Amount. The premium rate will be that charged for the plan and amount at the then attained age of such child. No waiver of premium, accidental death, loss of sight or limbs or other additional benefit shall be included in the policy except with the consent of Western and Southern.” (emphasis supplied)
Kenneth Jackson’s FCSP policy expired on March 10, 1979, his 25th birthday. Pursuant to the exchange clause, Kenneth Jackson exchanged his FCSP policy for a new life insurance policy number 41242393 face amount $5,000.00 issued October 9, 1981. The new policy contained the following suicide exclusion:
“We will not pay any benefits if the Insured dies by suicide ... within two years from the policy date. If the policy is in force at that time, we will return the premiums you paid less any policy loan.”
While a death certificate is admissible to show only that a death occurred' and not to show the cause of death, all parties have agreed that Kenneth Jackson died by suicide on May 31, 1982.
Mrs. Florine Jackson made a claim against the policy and defendant issued a check to her in the amount of $4,509.00 and to the funeral parlor in the amount of $491.00. Mrs. Jackson negotiated the check, depositing it in a homestead account. Defendant then stopped payment on both checks and plaintiff brought this suit.[1]
The trial judge granted judgment in favor of plaintiff and, on a denial of a motion for new trial, provided the following written reason for judgment:
“The ‘then issued’ limitation on the exchange clause is potestative and invalid.”
On appeal, defendant-appellant argues:
1. That the FCSP policy did contain a suicide exclusion, hence the policy issued to Keith Jackson for the face amount of $5,000.00 was not more restrictive than the FCSP policy.
2. The “then issue” clause is not a potestative condition.
3. The issue of compromise is not before the court.
Counsel for plaintiff raised the third argument that defendant’s issuance of the initial checks in response to plaintiff’s claim under the policy was evidence of a compromise. This issue is blatently erroneous as no denial of coverage was in exis-tance at the time the check was issued and no suit or demand in response to a denial was filed or made. While there is an interesting negotiable instrument question inherent in this fact situation, it deals with persons who are not party to this suit and the issue is not properly before this court. Accordingly, this issue .will not be further addressed.
The Kenneth Jackson policy issued for the face amount of $5,000.00 contained the following language:
“We will not pay any benefits if the Insured dies by suicide, while sane or insane, within two years from the policy date. If the policy is in force at that time, we will return the premiums you paid less any policy loan.” (emphasis supplied)
*1247 Because this policy was issued as a result of the exercise of the exchange clause in the FCSP policy, the $5,000.00 policy also contained the following additional language:
“This policy is issued under a right to exchange or option in another policy, number 7458651, or in a rider attached to it. This policy requires the insured to be in good health when the policy is received and the first premium is paid. We waive this requirement. This policy also provides that the incontestable period will start with this policy’s date. We will use an earlier date. That date will be the date of the other policy of the applicable rider or, if reinstated, the date of the last reinstatement.” (emphasis supplied)
Under the above language, we find that the “policy date” of the $5,000.00 policy is July 1, 1974, the date of the previous policy. Accordingly, Kenneth Jackson’s death by suicide, occurring on May 31,1982 was well beyond the “two years from the policy date” time period which thus ended on July 1, 1976. See also: R.S. 22:170(B)(3).
In Brady v. Fidelity Mutual Life Association, 13 Orl.App. 35 (1916), Judge Charles F. Claiborne as organ of the court stated:
“A clause in a policy making it incontestable after two years from its date will control an agreement in the application that death by suicide is not covered by the policy so that such death by suicide after the expiration of that period will not defeat liability on the policy.”
⅝ ⅝ ⅜! Sfc ⅝! ⅜
“The usual clause rendering the policy incontestable after it has been in force for a specified time excludes the defense of breach of condition by suicide, after the policy has thus become incontestable.” (AT 39).
The actual language of the FCSP policy is as follows:
“DEATH BENEFIT
Western and Southern will, subject to the terms and conditions of this agreement, pay the beneficiary the applicable Life Insurance Amount upon receipt of due proof that the death of an Insured Child occurred prior to the earlier of such child’s 25th birthday and the Family Children Security Protector Cease Date.
LOSS OF SIGHT OR LIMBS BENEFIT
Western and Southern will, subject to the terms and conditions of this agreement, pay the beneficiary the applicable Loss of Sight or Limbs Benefit ... No Loss of Sight or Limbs Benefit will be paid for any loss that results from (1) intentionally selfinflicted injury of self-inflicted injury while insane or (2) war, declared or undeclared, or any cause of act of war, whether or not such Insured Child is a member of any armed forces.
[[Image here]]
ACCIDENTAL DEATH BENEFIT
Western and Southern will, subject to the terms and conditions of this agreement, pay an Accidental Death Benefit ... EXCLUSIONS The Accidental death Benefit will not be payable if the death of an Insured Child or the injury causing death ...
(4) results from suicide, while sane or insane;
PUBLIC CONVEYANCE BENEFIT
IF A BENEFIT IS PA YABLE under the Accidental Death Benefit of Loss of Sight or Limbs Benefit as a result of accidental bodily injury sustained while an Insured Child was a fare-paying passenger in or upon a public conveyance operated by a licensed common carrier or taxicab service or an authorized passenger in or upon a school bus operated on an officially authorized scheduled trip, Western and Southern will pay a Public Conveyance Benefit equal to twice the amount payable under the Accidental *1248 Death Benefit or Loss of Sight or Limbs Benefit as a result of such accident.” (emphasis added).
It is apparent to this court that of the four types of benefits, both loss of sight/limbs and accidental death provide for specific suicide exclusions which would be binding upon the Public Conveyance Benefit, but no suicide exclusion was provided for Death Benefits.
We do not agree with the trial court’s finding that a potestative condition exists. We do, however, find that the issuance of a more restrictive policy with an exclusion that did not exist in the prior policy constituted, in light of the facts of this specific case, an error bearing on the “substantial quality” of the “object” under C.C. Article 1844 such that the more restrictive suicide exclusion clause in the second policy should be stricken. We further conclude that the trial judge acted properly in striking that clause.
Additionally, we find that under the policy date provision cited above, the policy date is July 1, 1974 such that Kenneth Jackson’s suicide occurring on May 31, 1982 was well beyond the two year limitation of the policy. This court is well aware that there exists a popular myth that “life insurance benefits are not payable in the event of death by suicide.” This myth is only partially true; life insurance benefits are payable where the death by suicide occurs after two years from the policy date and any more restrictive clause is invalid under our law, specifically R.S. 22:170(B)(3).
R.S. 22:170(B)(3) provides as follows:
“B. No policy of life insurance delivered or issued for delivery in this state shall contain any provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status, except the following provision, or provisions which in the opinion of the commissioner of insurance are substantially the same or more favorable to policyholders:
* * * * * *
(3) As a result of self-destruction while sane or insane within two years from the date of issue of the policy.”
Accordingly, we find that the court below committed no error and, for the reasons discussed, the judgment of the district court is affirmed.

AFFIRMED.

. Mrs. Jackson paid the thus outstanding funeral parlor bill, hence the award of $5,000.00 to her by the trial judge.